IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

XAH[1]                                                                                          PLAINTIFF

v.                                              Case No. 2:08CV00178 BD

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,                                                DEFENDANT

## MEMORANDUM AND ORDER

Plaintiff, XAH,[2] has appealed the final decision of the Commissioner of the Social Security Administration denying his claim for Supplemental Security Income ("SSI"). Both parties have filed appeal briefs and the case is ready for decision.[3]

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 721 (8th Cir. 2005); see *Young ex rel. Trice v. Shalala*, 52 F.3d 200, 201-02 (8th Cir. 1995)(substantial evidence review in child benefits case). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moore ex rel. Moore v. Barnhart*, 413 F.3d at 721.

In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may

---

[1] Plaintiff is a minor. (Tr. 20, 53, 309) In accordance with Fed.R.Civ.P. 5.2(a), only his initials should be used in Court filings.

[2] The application was filed on Plaintiff's behalf by his guardian grandmother. (Tr. 47-49, 132, 144, 187, 308-09)  The usual, and better, practice is for this appeal to be brought by the grandmother as plaintiff on behalf of the child. However, the Court is satisfied that it is not necessary to appoint a guardian ad litem under the circumstances of this case. See Fed.R.Civ.P. 17(c).

[3] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket #6)

not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The Commissioner found Plaintiff not disabled within the meaning of the Social Security Act. The only issue before this Court is whether the Commissioner's decision that the child was not disabled within the meaning of the Act is supported by substantial evidence.

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i) (1996).

After conducting an administrative hearing, the Administrative Law Judge[4] ("ALJ") concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time through June 1, 2007, the date of his decision. (Tr. 28) On August 1, 2008, the Appeals Council received and considered additional evidence and then denied Plaintiff's request for a review of the ALJ's decision, thereby making it the final decision of the Commissioner. (Tr. 5-8)

Plaintiff then filed his complaint initiating this appeal. (Docket #1) After consideration of the record as a whole, the Court finds that the decision of the Commissioner is supported by substantial evidence.

At the time of the administrative hearing, Claimant was eight years old, and a student in the third grade. (Tr. 309) In determining whether an SSI claimant under the age of 18 is under a disability, a three-step sequential evaluation process is used which is comparable to the five-step sequential evaluation process utilized for adults. 20 C.F.R. § 416.924(a) (2006).

---

[4] The Honorable Larry B. Creson.

The first step is a determination whether the child is engaged in substantial gainful activity. *Id.*, § 416.924(b). If so, benefits are denied; if not, the evaluation continues to the next step.

The second step involves a determination whether the impairment or combination of impairments is severe, *i.e.*, more than a slight abnormality that causes no more than minimal functional limitations. *Id.*, § 416.924(c). If not, benefits are denied; if so, the evaluation continues.

The third step involves a determination whether the child has one or more impairments that meet, medically equal, or functionally equal in severity a Listed impairment. *Id.*, § 416.924(d). If so, and if the duration requirement is met, benefits are awarded; if not, benefits are denied.

The ALJ found that Claimant had never engaged in substantial gainful activity. (Tr. 20) He determined that he did have "severe" impairments, *i.e.,* attention deficit hyperactivity disorder and a mood disorder, but that he did not have any impairment or combination of impairments that met or medically equaled a Listing or that functionally equaled a Listed impairment. (Tr. 20-22) Consequently, he found that Plaintiff was not disabled. (Tr. 28)

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (the Welfare Reform Act), P.L. 104-193, 110 Stat. 2105 (codified in scattered sections of 42 U.S.C.), required implementing regulations. One significant change that the final regulations made from the interim final regulations is the manner of determining functional equivalence. There is now a single method of evaluating functional equivalence based only on domains of functioning. Under this regulation, an impairment is functionally equivalent to a Listing when the impairment results in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning. 20 C.F.R. § 416.926a(a) (2006).

A "marked" limitation in a domain seriously interferes with a child's ability to

3

independently initiate, sustain or complete activities. *Id*. at § 416.926a(e)(2). It also means a limitation that is "more than moderate" but "less than extreme." *Id*. It is the equivalent of functioning expected on standardized testing with scores that are at least two, but less than three, standard deviations below the mean. *Id*.

An "extreme" limitation in a domain seriously interferes with a child's ability to independently initiate, sustain or complete activities. *Id*. at § 416.926a(e)(3). "Extreme" limitation also means a limitation that is "more than marked." *Id*. It is the rating given to the most serious limitations. *Id*. It is the equivalent of functioning expected on standardized testing with scores that are at least three standard deviations below the mean. *Id*.

The domains of functioning are:

1) Acquiring and using information;

2) Attending and completing tasks;

3) Interacting and relating with others;

4) Moving about and manipulating objects;

5) Caring for oneself; and

6) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1)(i-vi) (2006). These domains are described in greater detail, with examples, in the regulations. See 20 C.F.R. § 416.926a(g)-(l) (2006).

First, Plaintiff argues that the ALJ should have given controlling weight to the opinion of James Moseley, M.D., his treating psychiatrist. (Br. 5-7) On August 25, 2006, Dr. Moseley completed a medical and functional capacity assessment (child) in which he checked lines indicating that Plaintiff had "extreme" limitations in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others; "moderate" limitations in the domains of moving about and manipulating objects and in caring for himself; and "marked" limitation of functioning in health and physical well-being. (Tr.

4

203-07)

There is at least some question whether Dr. Moseley can correctly be characterized as a treating physician.[5] The record reveals that he first saw Plaintiff for 15 minutes on October 28, 2005. (Tr. 144) He next saw Plaintiff August 16, 2006, for ten minutes. (Tr. 249) He did not see Plaintiff again before offering his opinions concerning his limitations. See *Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004) (doctor had only met with patient on three occasions when she filled out checklist). "Generally, the longer a treating source has treated [a claimant] and the more times [the claimant] [has] been seen by a treating source, the more weight [to be given] to the source's medical opinion." 20 C.F.R. § 416.927(d)(2)(i) (2008). The treating physician rule is premised, at least in part, on the notion that the treating physician is usually more familiar with a claimant's medical condition than are other physicians. *Thomas v. Sullivan*, 928 F.2d 255, 259 n.3 (8th Cir. 1991).

In general, checklists, although admissible, are entitled to little weight. See *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001)(checklist format's generality and incompleteness of assessments limit their evidentiary value).

Most importantly, Dr. Moseley's opinions of extreme limitations of function are contradicted by all other evidence, including his own treatment notes. For instance, in October of 2005, when he first saw Plaintiff, Dr. Moseley wrote, "Mrs. Selvy reports that the 54-mg dosage of Concerta has been very helpful for him and he is doing much better since being on that dosage." (Tr. 144) After interviewing Plaintiff, Dr. Moseley observed:

> He was cooperative and appropriate. He reports that he is doing much better in school. His grades are going well. His behavior is going well. He is sleeping well and eating well, although he has lost some weight. His mood is happy. He

---

[5] It does not appear that, at the time that he sent the request, Plaintiff's lawyer thought Dr. Moseley was Plaintiff's treating physician. He addressed the request to Lita Brown, Ph.D. (Tr. 203) Actually, she was also an M.D. (Tr. 154)

> denies having sad mood.  He denies having thoughts about harming himself or others and there is no evidence of psychosis.

*Id*.

When he next saw Plaintiff, only days before he completed the medical and functional capacity assessment, Dr. Moseley indicated:

> For the most part [name redacted] has been doing well.  He has not had problems with the medication.  He has had no side effects.
>
> His moods have been stable and euthymic.  He denies having any depression.  He denied having thoughts about harming himself or others, and for the most part, he has done well.

(Tr. 249)

When the doctor next saw Plaintiff, for ten minutes on January 25, 2007, he recounted, "He is doing quite well at this point.  He is having significant improvement in his grades.  He is sleeping and eating well.  He is not having problems with depressed mood and he has no thoughts of harming himself or others." (Tr. 222)  On March 14, 2007, after having seen Plaintiff for eight minutes, he recorded:

> For the most part, he is doing quite well, both behaviorally and academically at school.  He is not having any difficulties with his medication.  He has not had any problems with mood.  He denies any problems with having thoughts about harming himself or others.  He is gaining weight . . . .

(Tr. 213)

The conclusory opinion of a treating physician, especially if it contradicts other opinions by the same physician, is entitled to little weight. *Woolf v. Shalala*, 3 F.3d at 1214.

Plaintiff's second grade teacher, who observed him five days a week for four months, indicated that he had no problems in the domains of acquiring and using information, moving about, or manipulating objects. (Tr. 96-99) She saw slight problems interacting and relating with others. (Tr. 98) She observed slight and some obvious (but less than serious) problems in the domains of attending and completing tasks and caring for himself.  (Tr. 97, 100)

Disability Determination Services physicians, who review all available medical records, determined that Plaintiff had no limitations in the domains of acquiring and using information, moving about and manipulating objects, caring for himself, or health and physical well-being; they found less than marked limitations in the domains of attending and completing tasks and interacting and relating with others. (Tr. 135-142A)  The ALJ is entitled to rely on the opinions of reviewing physicians when considering whether the claimant meets the requirements of a listed impairment. *Ostronski v. Chater*, 94 F.3d 413, 417 (8th Cir. 1996). The ALJ gave proper weight to the opinion of Dr. Moseley; under the circumstances, it was not entitled to controlling weight.

Plaintiff also argues that the ALJ should have re-contacted Dr. Moseley. (Br. 7-8) The ALJ is permitted to issue a decision without obtaining additional evidence as long as the record is sufficient to make an informed decision, as it was in this case. *E.g.*, *Haley v. Massanari*, 258 F.3d 742, 749 (8th Cir. 2001); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).  Plaintiff bears a heavy burden in showing the record has been inadequately developed; he must show both a failure to develop necessary evidence and unfairness or prejudice from that failure. *Combs v. Astrue*, 243 Fed.Appx. 200, 204 (8th Cir. 2007).  He did not meet that burden.

It is not the task of this Court to review the evidence and make an independent decision.  Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.  The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ.  *E.g.*, *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing and the medical and other evidence.  There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the]

conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; see also *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

    THEREFORE, the Court hereby affirms the final determination of the Commissioner and dismisses Plaintiff's complaint with prejudice.

    IT IS SO ORDERED, this 1st day of December, 2009.

_____
UNITED STATES MAGISTRATE JUDGE